

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NATIONWIDE MUTUAL INSURANCE COMPANY                    PLAINTIFF

VS.                           CIVIL ACTION NO. 3:03-cv-1053(DCB)(JCS)

ALICE YELVERTON; REBECCA LAFITTE,
MOTHER OF JUSTIN DYLAN GRANT,
DECEASED, FOR AND ON BEHALF OF
HERSELF AND ALL HEIRS AT LAW                           DEFENDANTS

<u>BENCH OPINION</u>

This cause came on for trial before the Court without a jury
on January 10, 2006.  At the conclusion of the evidence, the Court
announced to the parties that the record would remain open to
receive the deposition of Tommy Carpenter in lieu of his live
testimony,[1] and that deposition has been received by the Court.
Having carefully considered the pleadings, the submissions of the
parties, the record in this case and all evidence received at
trial, the Court finds as follows:

This is a declaratory judgment action concerning a homeowner's
insurance policy issued by Nationwide Mutual Insurance Company
("Nationwide") to defendant Alice Yelverton.  Defendant Rebecca
Lafitte commenced suit in state court against Yelverton alleging
that Yelverton was negligent in failing to protect Lafitte's son,

---

[1] Although a witness subpoena was served on Tommy Carpenter,
he did not appear at trial.  The Court discussed with counsel
whether a continuance was needed to receive Carpenter's testimony.
Counsel agreed that a previously taken deposition of Carpenter
could be received by the Court instead.

Justin Grant, from a fire which broke out in Yelverton's home, resulting in Justin's death.

Yelverton is the named insured in the homeowner's policy. Nationwide is defending Yelverton in the state court suit under reservation of rights.  Nationwide seeks a declaratory judgment stating that the policy's exclusion from coverage for bodily injuries to an "insured" includes Justin Grant within the definition of "insured."  Lafitte contends that Justin was not an "insured" under the policy exclusion.

The language in this particular policy specifically excludes coverage for any personal liability for "bodily injury to an insured as defined in Definitions 3a and 3b."  (Nationwide's Homeowners Policy, p.14, Section II - Exclusions).  The policy language exempts Nationwide from liability to persons qualifying as an "insured" under the definitions set forth in the policy. "Insured" is defined in the policy as follows:

> "Insured" means you and the following who live in your household:
>
> a. your relatives.
>
> b. any other person under age 21 and in the care of you or your relatives.

(Nationwide's Homeowners Policy, p.2, Definitions ¶ 3).

After a partial ruling on the parties' motions for summary judgment, the issues were narrowed as follows: Whether Justin Grant was living in Alice Yelverton's household at the time of the fire,

and if so, whether he was in the care of Alice Yelverton or her relatives.

On October 16, 2001, the day of the fire, Justin Grant was present in the home of Alice Yelverton in Hinds County, Mississippi. Also present that day were Tommy Carpenter, Yelverton's grandson, and Rebecca Lafitte, who had been living with Carpenter for a number of years. Justin was Rebecca Lafitte's son but Tommy Carpenter was not his father. Carpenter and Lafitte were the parents of an infant daughter, Kayla Lafitte, who was with her parents. Also present were Pamela Feathers, Yelverton's daughter, and Adam Hennington.

Tommy Carpenter and Rebecca Lafitte, along with Kayla and Justin, had moved into Alice Yelverton's home approximately two weeks prior to October 16, 2001. They had moved from Memphis, Tennessee, and were living with Yelverton while Carpenter looked for permanent employment and housing. Justin had been enrolled at Oak Forest Elementary School in Hinds County.

On the night of October 16, 2001, Carpenter and Lafitte, along with Kayla, left the Yelverton home to visit a friend. They allege that they told Yelverton they were leaving Justin asleep in the bedroom. Yelverton contends that she believed Justin to have left with Carpenter and Lafitte. Sometime that evening, a fire started in the house. Although Yelverton escaped from the house, Justin did not, and he died later that night from smoke inhalation.

3

"The construction and effect of an insurance policy are matters of law to be decided by the court." Jones v. Southern Marine & Aviation Underwriters, Inc., 888 F.2d 358, 360 (5th Cir. 1989) (citations omitted). Inasmuch as this Court's jurisdiction is grounded in diversity, the oft-cited case of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), commands the Court to employ the substantive law of Mississippi to determine the outcome of this dispute. See Sentry Ins. v. R.J. Weber Co., 2 F.3d 554, 556 (5th Cir.1993).

Regarding construction of insurance policies, Mississippi law is clear that an insurance contract, like any other contract, must be interpreted according to its terms. Foreman v. Continental Casualty Co., 770 F.2d 487, 489 (5th Cir. 1985). The interpretation of an insurance policy is a question of law for the court when the meaning of the terms is clear and unambiguous. See Aero Int'l, Inc. v. United States Fire Ins. Co., 713 F.2d 1106, 1109 (5th Cir. 1983); Reece v. State Farm Fire & Cas. Co., 684 F.Supp. 140, 143 (N.D. Miss. 1987). "No rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear.'" Id. at 489 (quoting State Auto. Mut. Ins. Co. v. Glover, 176 So.2d 256, 258 (Miss. 1965)).

"Where terms of insurance contracts are ambiguous or doubtful,

4

the contract must be construed most favorably to insured and against insurer. Terms of insurance policies are construed favorably to insured wherever reasonably possible, particularly exclusion clauses." State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So.2d 1371, 1372 (Miss. 1981). "A supplemental rule of construction is that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail." Caldwell v. Hartford Accident & Indemnity Co., 248 Miss. 767, 160 So.2d 209 (1960).

However, it is also well-settled law that "the special rules favoring the insured are only applicable when there is an ambiguity ... [and that] courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties ... even when the result is an apparently harsh consequence to the insured." Courts will neither create an ambiguity where none exists nor make a new contract for the parties. If the policy language is clear, unequivocal, and, hence unambiguous, its terms will be enforced. Brander v. Nabors, 443 F.Supp. 764, 769 (N.D. Miss. 1978) (internal citations omitted).

In determining whether an insurance policy is ambiguous, "[t]he mere fact that policy language requires interpretation does not render the policy ambiguous." Employers Ins. of Wausau v. Trotter Towing Corp., 834 F.2d 1206, 1210 (5th Cir. 1988) (citations

omitted).  The construction of an insurance contract is limited to
an  examination  of  the  "written  terms"  of  the  policy  itself.
Employers Mut. Casualty Co. v. Nosser, 250 Miss. 542, 553, 164
So.2d 426, 430 (1964).  The policy itself is the sole manifestation
of  the  parties'  intent,  and  no  extrinsic  evidence  is  permitted
absent  a  finding  by  a  court  that  the  language  is  ambiguous  and
cannot  be  understood  from  a  reading  of  the  policy  as  a  whole.
Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss. 1987).
If  an  insurance  contract  is  clear  and  unambiguous,  the  language
therein must be given its plain meaning.  Gulf Nat'l Bank v. United
States Fire Ins. Co., 713 F.2d 1106, 1109 (5th Cir. 1983); see also
Putman v. Insurance Co. of North America, 673 F.Supp. 171, 175
(N.D. Miss. 1987) ("Mississippi law requires that the words of the
contract  be  given  their  ordinary  meaning.")(citing  Mississippi
Power and Light v. United Gas Pipe Line, 760 F.2d 618 (5th Cir.
1985)).   The  Court  must  construe  the  policy  in  a  manner  that
effectuates  the  parties'  intentions.   See  Western  Line  Consol.
School Dist. v. Continental Cas. Co., 632 F.Supp. 295, 302 (N.D.
Miss. 1986)(citing Monarch Ins. Co. v. Cook, 336 So.2d 738, 741
(Miss.1976)).

The  first  question  for  this  Court  is  whether,  under
Mississippi law, the phrase "live in [the insured's] household" in
the context of a homeowner's policy is ambiguous.   "Live" can be
considered  synonymous  with  "reside."    Webster's  International

Dictionary (3rd Ed.); <u>see</u> <u>also</u> <u>Davis v. State Farm Mut. Auto. Ins.</u> <u>Co.</u>, 583 So.2d 225, 229–30 (Ala. 1991) and cases cited therein; <u>St. Paul fire and Marine Ins. Co. v. Lewis</u>, 935 F.2d 1428 (3rd Cir. 1991).

In <u>Merrimack Mutual Fire Ins. Co. v. McDill</u>, 674 So.2d 4 (Miss. 1996), the issue before the Mississippi Supreme Court was whether the lower court had erred in entering summary judgment holding that the insureds' child was a member of his parents' household under a homeowner's policy. Finding the case "inundated with disputed facts, material in nature," the Mississippi Supreme Court reversed the grant of summary judgment and remanded for a jury trial on the "household resident" issue. <u>Merrimack Mutual</u>, 674 So.2d at 10. In doing so, the state Supreme Court noted that the Fifth Circuit Court of Appeals had recently addressed the meaning of the phrase "resident of the insureds' household" under Texas law:

> "the term 'household' is not defined within the four corners of the Policy; neither is household truly a legal term of art. Rather, it is a term of ordinary, conversational usage and understanding."

<u>Cicciarella v. Amica Mutual Ins. Co.</u>, 66 F.3d 764, 768 (5th Cir. 1995)(quoted in Merrimack Mutual, 674 So.2d at 9). The Mississippi Supreme Court added:

> Significant to the case <u>sub judice</u> is whether it can be said with certainty that, as used in the Merrimack policy, "household" can mean any household or only the primary household, principal household, permanent household, or household for the greatest or greater part

> of the year.  As the subject policy is without any
> adjective or phrase modifying "household," the answer to
> that question is not apparent from the document.  What is
> apparent, however, is that "in the policy, 'household' is
> susceptible of more than one interpretation – indeed,
> multiple interpretations.  This is quintessential
> ambiguity and thus a quintessential factual question for
> resolution by the jury." Cicciarella, 66 F.3d at 769.

Merrimack Mutual, 674 So.2d at 9).  The Mississippi Supreme Court

also quoted Pierce v. Aetna Casualty & Surety Co., 627 P.2d 152

(Wash. App. 1981), in which the Washington Court of Appeals stated:

"The phrase 'residents of the same household' has no fixed meaning

but varies according to the circumstances of the case." Id. at 154

(quoted in Merrimack Mutual, 674 So.2d at 9)(additional citations

omitted).  The state Supreme Court quoted with approval the general

definitions of "resident" as "one who dwells or has an abode in a

place for a continued length of time," and of "household" as "those

who dwell under the same roof to compose a family living together."

Consumers United Ins. Co. v. Johnson, 614 P.2d 657 (Wash. App.

1980)(quoted in Merrimack Mutual, 674 So.2d at 9).

     In Wright v. Allstate Indemnity Company, 618 So.2d 1296 (Miss.

1993), Justice Banks, in a concurring opinion, wrote that "the term

'household' is not viewed in the abstract, and it will be given a

broad interpretation in favor of coverage." Id. at 1303 (Banks, J.

concurring)(citing Wrigley v. Potomac Insurance company, 504

N.Y.S.2d 324, 325 (1968); Mazzilli v. Accident & Casualty Insurance

Company of Winterthur, Switzerland, 170 A.2d 800, 804 (1961)).

     In Farmers Mutual Insurance Company v. Tucker, 576 S.E.2d 261

(W.Va. 2002), the Supreme Court of West Virginia held:

> It is clear ... that a determination of whether a person is a resident of a particular household is an elastic concept entirely dependent upon the context in which the question arises. As used in the Farmers Mutual policy in this case, the phrase "resident of your household" is not defined. The parties – and many other courts – are able to give the policy language differing but equally reasonable constructions. Accordingly, we find that the policy language is ambiguous and must be construed.

> We therefore hold that, in a homeowner's insurance policy that does not otherwise define the phrase "resident of your household," the phrase means a person who dwells – though not necessarily under a common roof – with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together.

Id. at 270. This Court finds that the Merrimack Mutual case and the concurring opinion in Wright indicate that Mississippi would agree with West Virginia and other jurisdictions that have found the differing but equally reasonable constructions of "resident of your household" render the language ambiguous, so that it must be construed in favor of coverage. See also AID Insurance Co. v. Armstrong, 811 P.2d 507, 511 (Idaho App. 1991)("Most courts interpret the phrase 'resident of the same household' to extend coverage if this can be done under a reasonable interpretation of the facts."). Specifically, this Court finds that "live in [the insured's] household" under Mississippi law means residing with a named insured in a such a manner and for a sufficient length of time so as to be considered a family living together.

Courts in other jurisdictions have utilized a number of

factors in determining "household resident" status.  Among the general criteria are: "(1) the amount of time spent in the residence; (2) the nature of the living arrangements; (3) the types of activities undertaken in the residence; and (4) the person's intentions regarding the length and nature of the stay." Blanchard v. Peerless Insurance Company, 958 F.2d 483, 486 (1st Cir. 1992). A variation includes "(1) the subjective or declared intent of the person of remaining in the household, either permanently or for an indefinite or unlimited length of time; (2) the formality of the relationship between the person and the members of the household; (3) whether they live in the same house or premises; and (4) whether the person has another place of lodging." Horace Mann Ins. v. Stark, 987 F.Supp. 562, 567 (W.D. Mich. 1997).  Another test consists of three factors: "(1) living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon." State Farm and Casualty Co. v. Breazell, 478 S.E.2d 831, 832 (S.C. 1996).

No single factor is the sole or controlling test of whether a person is a resident of a household.  See AID Ins. Co. v. Armstrong, 811 P.2d at 513; Londre by Long v. Continental Western

Ins. Co., 343 N.W.2d 128, 130 (Wis. App. 1983).   However, it has been held that "[t]he question of whether a person is a resident of one place or another is largely a question of intention." American Commerce Ins. Co. v. Bachicha, 256 F.Supp.2d 1219, 1223 (D. N.M. 2003).   In Farmers Ins. Co. of Oregon v. Jeske, 971 P.2d 422 (Or. App. 1998), the Oregon Court of Appeals found that the various factors used by courts to determine "household residence" status collectively "point in a common direction – whether the insured and others in the household intend for the insured's house to be their place of permanent residency and reasonably act on that intent." Id. at 424 (emphasis in original).

The term "resident" has been found "to include intent and permanency of abode in addition to mere physical presence." Hawkeye Sec. Ins. Co. v. Sanchez, 460 N.E.2d 873 (Ill. App. 1 Dist. 1984); see also Appell v. State Farm Ins. Co., 292 A.D.2d 407, 407 (N.Y. 2002)("Courts have held that residency requires something more than temporary or physical presence and requires at leave some degree of permanence and intention to remain.")(citations omitted). The Supreme Court of Virginia has opined that "household resident" status requires a "settled or permanent status" and a "unit of permanent and domestic character." Allstate Ins. Co. v. Patterson, 344 S.E.2d 890, 893 (Va. 1986).

The Court now turns to the evidence presented at trial. Because Justin was a minor in the custody and care of his mother,

his residency must be determined by evaluating his mother's residency; that is, if Rebecca Lafitte was a resident of Alice Yelverton's household, so too was her son Justin.  See Horace Mann v. Stark, 987 F.Supp. at 567.

Rebecca Lafitte testified that she and Tommy Carpenter moved from Memphis, Tennessee, to Mississippi with their daughter, Kayla Lafitte, and Rebecca Lafitte's son, Justin Grant, in early October, 2001.  Carpenter contacted his grandmother, Alice Yelverton, to ask if the four of them could visit with her for two or three weeks while they looked for a place to live.   In his deposition, Carpenter testified that his grandmother agreed to let them stay with her temporarily.  Lafitte testified that after the first week, she enrolled Justin in school and used Yelverton's address and phone number on the enrollment application.  She explained that she was told by school officials that Justin would not be accepted if she could not prove residency.  However, she maintains that she and Justin, along with Carpenter and Kayla, were merely guests in Yelverton's home.

Alice Yelverton testified that Tommy Carpenter, her grandson, had called to say he was coming to Mississippi to look for work and wanted to know if he could stay with her until he found work and a place to live.  She agreed.  Yelverton testified that Carpenter and his family did not pay her anything because they were visiting guests.  She considered them a separate family, and considered them

12

her grandson's responsibility.

The Court finds the credible evidence establishes that Rebecca Lafitte's intent was to leave the Yelverton residence after a short stay.  She did not intend to permanently remain with Yelverton, nor was she living there with the intent to remain there indefinitely. She and Justin were not permanent members of the Yelverton household; rather, their stay there was transient in nature.  They were there for a limited time and for the limited purpose of finding a place to live.

Nationwide asserts that Lafitte's use of Yelverton's address in Justin's school enrollment indicates "household resident" status.  The Court finds, however, that this was done for mere expediency.  Lafitte perceived that she had no alternative if she wanted Justin to attend school.  Nationwide also points out that Lafitte and Carpenter admitted that after two weeks they had not filled out any applications for apartments or signed a lease. However, this is understandable in that Carpenter's time was spent looking for work, he did not have any income, and he did not succeed in finding work until October 16, 2001, the day of the accident.  Nationwide contends that Carpenter's and Lafitte's failure to pay rent to Yelverton or contribute financially is evidence of their status as household residents.  The Court finds, to the contrary, that this is consistent with the testimony that they were merely Yelverton's temporary guests.

Finally, Nationwide makes the legal argument that under Mississippi law "every person has at all times one, but only one, domicile." Plaintiff's Proposed Findings of Fact and Conclusions of Law, p. 6 (quoting Weisinger v. McGehee, 134 So. 148, 150 (Miss. 1931)). "[W]hen Tommy Carpenter and his family moved from Memphis with the intent of never returning and with the intent to start a better life in Mississippi, their domicile was changed. Since they lived nowhere other than with Ms. Yelverton, until they found a place of their own, their domicile was that of Ms. Yelverton. Therefore, Justin was living at the Yelverton house and at a minimum was a resident under the policy." (Id., p. 7).

Domicile and residence are not synonymous. In fact, Mississippi law recognizes that "residence is an entirely different and more flexible concept" than domicile. See Aetna Casualty and Surety Co. v. Williams, 623 So.2d 1005, 1009 (Miss. 1993). Moreover, Nationwide would have the Court declare Rebecca Laffite and Justin Grant residents of the Yelverton household by default. It is not legal residence or domicile that is at issue here, rather it is the phrase "live in [the insured's] household" as applied to the facts of this case, including the intention of the parties concerned. The Court finds Nationwide's argument unavailing.

After careful consideration of the applicable law and all of the evidence in this case, the Court finds that Rebecca Laffite and Justin Grant were not residing with Alice Yelverton in a such a

manner and for a sufficient length of time so as to be considered a family living together.  Therefore, Justin Grant was not "living in the Yelverton household" for purposes of the homeowner's policy, and Nationwide is not entitled to a declaratory judgment in its favor.

A final judgment in accordance with Fed.R.Civ.P. 58 shall be entered, dismissing this cause with prejudice.

This the 1st day of March, 2006.


S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE

15